**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JACOB FERGUSON,**

**Petitioner,**

**v.**

**WARDEN BELMONT CORRECTIONAL INSTITUTION,**

**Respondent.**

**Case No. 2:26-cv-89
Chief Judge Sarah D. Morrison
Magistrate Judge S. Courter M. Shimeall**

**OPINION AND ORDER**

Petitioner Jacob Ferguson, a state prisoner incarcerated at Belmont Correctional Institution, brings a *pro se* habeas corpus petition pursuant to 28 U.S.C. § 2254. Now pending is Petitioner's Motion to Stay Proceedings and Hold Proceedings in Abatement While Petitioner Exhausts Available Pending State Remedies. (ECF No. 3; *see* ECF No. 15, at 898–901 (Respondent's opposition)). For the reasons below, the motion is **GRANTED**.

## I. Overview

Petitioner requests a stay on grounds that "he has unexhausted State remedies in the form of a delayed direct appeal with the Ohio Supreme Court." (ECF No. 3, at 39). Specifically, he seeks to present the following in a delayed direct appeal: (1) his *Miranda* waiver and subsequent confession were not voluntary because detectives threatened to have children's services remove his children from his fiancée's custody; and (2) his involuntary confession was not harmless beyond a reasonable doubt. Petitioner explains that he previously sought and obtained leave to file a delayed direct appeal to the Ohio Supreme Court, but, "due to the prison's Mail room" (*id.* at 40), he never received notice that leave had been granted or that he needed to file a memorandum in support—all of which resulted in the Ohio Supreme Court dismissing

Petitioner's delayed direct appeal.

## II. Legal Standards and Initial Background

State prisoners seeking habeas corpus relief must first exhaust all remedies available in the state courts. 28 U.S.C. § 2254(b); *Picard v. Connor*, 404 U.S. 270, 275 (1971). Exhaustion requires a state defendant with federal constitutional claims to fairly present those claims first to the state courts—because of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts. *See Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard*, 404 U.S. at 275–76. Under the "fair presentation" requirement, each claim must be presented to the state courts in a manner that affords an opportunity to remedy the alleged constitutional violation; this obligates a petitioner to present the same factual and legal basis for each claim to the state courts that the petitioner seeks to present at the federal habeas stage. *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996); *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). A claim is not exhausted if there remain available state-court remedies. 28 U.S.C. §§ 2254(b)–(c). That is, if a petitioner fails to fairly present his claims through the requisite levels of state appellate review but still has an avenue open to him in the state courts by which he may present the claims, those claims are unexhausted.

Federal district courts ordinarily do not adjudicate a "mixed" habeas petition that presents both exhausted and unexhausted claims. *Rose v. Lundy*, 455 U.S. 509, 518–19 (1982). But district courts have the discretion to stay habeas corpus proceedings and hold them in abeyance to allow a petitioner to return to the state courts to exhaust the unexhausted claims. *Rhines v.*

*Weber*, 544 U.S. 269, 275–76 (2005).[1]

Stay-and-abeyance is warranted only when the petitioner shows good cause for failure to exhaust claims earlier and when the unexhausted claims are not plainly meritless. *Id*. at 277. Stay-and-abeyance must also be conditioned on time limits so as not to undermine Congress's intent to streamline habeas proceedings and encourage the finality of state court judgments. *Id*. at 276–78; *see also McBride v. Skipper*, 76 F.4th 509, 513 (6th Cir. 2023) (discussing *Rhines* considerations). Stay-and-abeyance is thus inappropriate if a petitioner engages in abusive litigation tactics or intentional delay. On the other hand, "it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Rhines*, 544 U.S. at 278.

Here, Respondent contends that Petitioner meets neither of the *Rhines* requirements.[2] Specifically, Respondent asserts that Petitioner cannot show good cause for his failure to exhaust

[1] Strictly speaking, the Petition in this case is not "mixed," as it does not contain exhausted and unexhausted claims. That said, the Sixth Circuit has made clear that *Rhines* can—in a given Court's discretion—also apply to unmixed petitions. *See Robinson v. Horton*, 950 F.3d 337, 347 (6th Cir. 2020) (explaining its decision to vacate and remand for determination of whether a case with a single unexhausted claim should be stayed pursuant to *Rhines*). Further, there are examples of cases in this Court where stay-and-abeyance was granted even when the petitions contained only exhausted claims. *See, e.g., Conway III v. Houk*, No. 2:07-cv-947 (S.D. Ohio Mar. 1, 2016, ECF No. 161) (Marbley, J.); *Were v. Warden, Ohio State Penitentiary*, No. 1:10-cv-698 (S.D. Ohio Sept. 23, 2015, ECF No. 108) (Watson, J.). Whether the claims at issue are exhausted or unexhausted, under the above case law, the key considerations are whether Petitioner had good cause for his failure to exhaust and whether his claims are potentially meritorious. *Jones v. Nelsen*, No. 3:23-cv-1063, 2026 WL 659406, at *5 (M.D. Tenn. Mar. 9, 2026).

[2] Aside from noting that Petitioner has not initiated any state court proceedings (ECF No. 15, at 901), Respondent does not expressly assert, nor does the record before this Court suggest, that Petitioner has engaged in abusive litigation tactics or intentional delay. That component of *Rhines* therefore does not foreclose Petitioner's motion.

his claims sooner because he "should have known that the Ohio Supreme Court mandates a memorandum in support of jurisdiction for a discretionary appeal" and because the United States Court of Appeals for the Sixth Circuit has held that a petitioner's *pro se* status and ignorance of the law do not establish the requisite good cause for failure to timely exhaust state court remedies. (ECF No. 15, at 899 (citation omitted)). Respondent also asserts that Petitioner's claims are plainly meritless because they are barred by multiple procedural defaults, and because they are not cognizable in habeas corpus. (*Id*. at 900–01).

## III. Procedural History

Petitioner was convicted of ten counts of rape of a minor and sentenced on June 6, 2023, to an aggregate mandatory sentence of thirty years to life in prison. (ECF No. 14, at 311–15).

Represented by counsel, Petitioner appealed and raised a single assignment of error in his underlying case: his rights to counsel and due process under the state and federal constitutions were violated by the admission of an involuntary confession. For support, Petitioner asserted that his *Miranda* waiver and confession were not voluntary because detectives threatened to have Children's Services remove his young children from the custody of his fiancée. (ECF No. 14, at 336–41). He reasoned that the detective's "not-so-subtle threats regarding Children's Services intervention are just the sort of coercive tactics that have repeatedly caused courts to find confessions to be involuntary." (*Id*. at 338 (citing *Lynumn v. Illinois*, 372 U.S. 528 (1963)). On April 1, 2024, the appellate court overruled Petitioner's assignment of error and affirmed the judgment against him. (*Id*. at 386).

Proceeding *pro se*, Petitioner filed an untimely notice of appeal to the Supreme Court of Ohio on August 27, 2024, accompanied by a motion for delayed appeal, sworn affidavit, a prison withdrawal slip time-stamped May 3, 2024, and copies of the envelope in which he mailed these

documents to the Ohio Supreme Court. (*Id*. at 404–13). The Notice of Appeal contains two "Received" time-stamps by the Supreme Court of Ohio—one dated July 5, 2024, and the other dated August 27, 2024—and one "Filed" time-stamp dated August 27, 2024. (*Id*. at 404). The Ohio Supreme Court's docket reflects that Petitioner's Notice of Appeal was filed on August 27, 2024.[3]

In his affidavit accompanying his motion for a delayed direct appeal, Petitioner stated that he originally placed his notice of appeal and memorandum in support of jurisdiction in the prison mail service system on April 30, 2024. (*Id*. at 409). Corroborating that assertion: the notice of appeal was signed and dated April 30, 2024 (*id*. at 405), and Petitioner's withdrawal slip for the postage was dated April 30, 2024, and time-stamped as received by the prison on May 3, 2024 (*id*. at 411). Petitioner further stated that, after being sent to and returned by the United States Postal Service in Pittsburgh, the mailing was eventually reprocessed by the prison mail system on May 6, 2024.[4] (*Id*. at 409). Asserting that the Supreme Court of Ohio received his mailing on July 5, 2024 (which is consistent with one of the "Received" timestamps being dated July 5, 2024), Petitioner stated that "he cannot provide an answer as to why it took from May 6, 2024 until July 5, 2024 for the court to receive the legal envelope containing the appeal documents." (*Id*.). Petitioner asserted that once he learned that the Ohio Supreme Court's receipt of the mailing on July 5 rendered it untimely, he exercised "due diligence in filing this delayed

---

[3] *See* https://www.supremecourt.ohio.gov/clerk/ecms/#/caseinfo/2024/1227; *see also Lynch v. Leis*, 382 F.3d 642, 648 n.5 (6th Cir. 2004) (courts may take judicial notice of court records available online to the public).

[4] Petitioner's affidavit states that the mailing was originally processed on May 30, 2024, and then was reprocessed on May 6, 2024. (ECF No. 14, at 409). Context indicates that Petitioner meant that the mailing was originally processed on April 30, not May 30 (since the date he said it was reprocessed was three weeks prior to May 30).

appeal." (*Id*.). He concluded by asserting that he had demonstrated good cause for not filing his Notice of Appeal within 45 days and that it would be a fundamental miscarriage of justice if the Ohio Supreme Court denied his motion for a delayed appeal.

Presumably the Ohio Supreme Court agreed, since it granted his motion on October 29, 2024, and gave him 30 days to file his memorandum in support of jurisdiction. (ECF No. 14, at 432). In his Motion before this Court, as noted earlier, Petitioner maintains that he never received that Entry. (ECF No. 3, at 40). Thus, when Petitioner failed to file a memorandum in support of jurisdiction, the Ohio Supreme Court responded on December 10, 2024, by dismissing his appeal for failure to prosecute with the requisite diligence. (ECF No. 14, at 433).

As to the substance of Petitioner's motion to file a delayed appeal, he raised two propositions of law: (1) his rights to counsel and due process under the state and federal constitutions were violated by the admission of an involuntary confession; and (2) the appellate court's adjudication of the claim involved an unreasonable application of clearly established law when it concluded that the detective's references to his family members and children's service did not qualify as coercive. (ECF No. 14, at 407–08). Contrary to Respondent's assertion, those are the same claims that he raised in the court of appeals below.

## IV. Analysis

Petitioner seeks stay-and-abeyance under *Rhines*, which would result in a stay of these proceedings and an abeyance of the current petition—all to allow Petitioner to return to the state court system to meet his exhaustion requirement.

As noted above, to satisfy *Rhines*' good cause requirement, Petitioner asserts that the reason he failed to file his memorandum in support of jurisdiction was because he "never received any legal notification of the judgement [sic] entry granting the delayed appeal or

ordering the filling [sic] of the memorandum in support of the direct appeal." (ECF No. 3, at 39). In light of the irregularities that caused Petitioner's original Notice of Appeal to be untimely, as well as the corroboration offered by the exhibits attached in support, the Undersigned is inclined—just for the present motion—that Petitioner never received the Ohio Supreme Court's Entry.

Respondent's counters do not persuade the Court otherwise. Respondent contends Petitioner should have known that he would have to file a memorandum in support of jurisdiction and that he cannot rely on his *pro se* status or ignorance of the law to establish good cause for failing to do so. (ECF No. 15, at 899). A reading of the Supreme Court Rules of Practice governing the pursuit of discretionary direct appeals—both timely and untimely—does not support Respondent's suggestion. To be sure, a *timely* notice of appeal seeking discretionary review—one filed within 45 days of the date of the court of appeals' decision affirming the trial court's judgment—is to be accompanied by memorandum in support of jurisdiction. Ohio S. Ct. Prac. R. 7.01(A)(1)(a)(ii) ("Except as provided by Rule 7.01(A)(3), the appellant shall also file a memorandum in support of jurisdiction, in accordance with Rule 7.02, at the time the notice of appeal is filed."). But when an appellant files a motion for leave to file a *delayed* direct appeal—one filed more than 45 days after the court of appeals' decision—the rules do not require or permit the appellant to file a memorandum in support of jurisdiction until the Ohio Supreme Court grants his motion and directs him to file the memorandum. Ohio S. Ct. Prac. R. 7.01(A)(4)(b) ("A memorandum in support of jurisdiction shall not be filed at the time a motion for delayed appeal is filed. If the Supreme Court grants a motion for delayed appeal, the appellant shall file a memorandum in support of jurisdiction within thirty days after the motion

for delayed appeal is granted. *** .").[5]

Given all of this, Petitioner was not required or permitted to file a memorandum in support of jurisdiction until the Supreme Court granted his motion for a delayed appeal. If, as Petitioner claims, he never received the Ohio Supreme Court's entry granting his motion, that was something outside of his control and had nothing to do with his *pro se* status or ignorance of the law. Between the irregularities that caused Petitioner's original Notice of Appeal to be untimely, and accepting for the time being Petitioner's claim that he never received the Ohio Supreme Court's Entry granting his motion for a delayed appeal, the Undersigned concludes that Petitioner has demonstrated good cause for his failure to exhaust his claims earlier.

Respondent fares no better with the argument that Petitioner's claims are patently meritless because Petitioner they are procedurally defaulted. (ECF No. 15, at 900–01). Respondent asserts that the claims for which Petitioner sought and obtained leave for a delayed direct appeal to the Ohio Supreme Court were not the claims that he had raised in the court of appeals below, which meant that the Ohio Supreme Court never would have addressed them—even if Petitioner had filed a memorandum in support of jurisdiction.

The record says otherwise. Respondent is indeed correct that that the Ohio Supreme Court generally will not consider claims that were not raised in the court of appeals below. *See, e.g.*, *North v. Beightler*, 112 Ohio St. 3d 122, 123 (2006) ("North did not, however, raise this issue in his petition or in the proceedings in the court of appeals, so he has waived this issue on appeal." (citing *Phillips v. Irwin*, 96 Ohio St. 3d 350, ¶ 6 of the syllabus (2002), and *Taylor v.*

[5] It is immaterial whether Petitioner's initial Notice of Appeal—the one that, through no fault of his, was untimely by the time it was received—failed to contain the required Memorandum in Support of Jurisdiction. A Memorandum in Support filed with an untimely Notice of Appeal would not have been considered and its absence was not the reason the untimely appeal was not accepted or docketed.

*Mitchell*, 88 Ohio St. 3d 453, 454 (2000))).

But Respondent is not correct that the claims Petitioner sought to raise in his delayed direct appeal to the Ohio Supreme Court were different from the claims he raised in the court of appeals below. As set forth above, the claims that Petitioner presented in his motion for a delayed appeal to the Ohio Supreme Court are the same claims (ECF No. 14, 407–08) that he raised in the court of appeals below (ECF No. 14, at 336—38). Petitioner—who is, it's worth noting again, proceeding *pro se*—may have restyled and reworded his claims in his Notice of Appeal to the Ohio Supreme Court, but the legal and factual bases were unchanged. His propositions of law challenged the (1) voluntariness of his confession (2) on the basis of what Petitioner contends was the detective's coercive tactic of referring to Children's Services. In his motion for delayed appeal to the Ohio Supreme Court (ECF No.14, at 407), he cited the same *Lynumn v. Illinois* case that he cited in his appellate brief to the court of appeals (ECF No. 14, at 338). In other words, the claims that Petitioner raised in his motion for delayed appeal are the same claims that he argued in the court of appeals below. The Court is therefore not convinced that Petitioner's claims are patently without merit because they were defaulted.

Turning to the substance of the claims, the Undersigned need not (and cannot) fully adjudicate the claims the now to observe that they are not patently meritless for the purpose of resolving the present issue. A review of the record reveals that Petitioner's confession was a critical piece of the state's evidence against him and that he went to great lengths before and during trial to challenge the admission of that confession. These claims were also the sole focus of his counseled argument on direct appeal to the court of appeals. Petitioner may yet fail to prevail in the Ohio Supreme Court and in this Court, but the Court cannot at this stage say that his claims are patently without merit.

In sum, the Undersigned concludes that Petitioner has satisfied both requirements for a *Rhines*-based stay. But the inquiry does not end here. While the Undersigned is satisfied that Petitioner meets the standards for a *Rhines* stay, it is unclear whether state law allows Petitioner to file a second motion for a delayed appeal following the dismissal of his first motion for a delayed appeal for failure to prosecute. The Supreme Court Rules of Practice are silent on this question and the caselaw is ambiguous. As noted earlier, jurisdictional appeals from an appellate court to the Supreme Court of Ohio are governed by Ohio S. Ct. Prac. Rules 7.01 through 7.10. Nowhere in those rules is there an express or implied prohibition against the filing of a second motion for delayed appeal, even though the rules do contain other express prohibitions (such as against the filing of supplemental and reply memoranda, Ohio S. Ct. Prac. R. 7.04).

Caselaw does not offer definitive guidance. To be sure, several Ohio appellate courts have held that res judicata bars motions for delayed appeal after initial motions for delayed appeal were denied on the merits. *See, e.g.*, *State v. Ellis*, No. 05AP-1048, 05AP-1049, 2005 WL 3047431, at *1 (Ohio App. 10 Dist. Nov. 15, 2005) ("Because we considered and denied the merits of appellant's previous motions for leave to file delayed appeals, res judicata bars appellant's current motions." (citations omitted)); *see also State v. Houston*, No. 28330, 2019 WL 1761704, at *2 (Ohio App. 2 Dist. Apr. 15, 2019) (holding "that where an appellant has already raised, and this court has already overruled, a motion for leave to file a delayed appeal on the merits, res judicata bars a second or successive motion made on the same grounds," and noting the "absence of Supreme Court authority on the subject"). But at least one Ohio appellate court appears to have come out the other way. *See State v. Morrissey*, No. 77179, 2000 WL 1876406, at *2 (Ohio App. 8 Dist. Dec. 18, 2000) (holding that App. R. 5(A) does not limit the number of times a party may request leave to file a delayed appeal).

Moreover, the closest the Supreme Court of Ohio has come to weighing in on this issue might be read to signal its disapproval of the filing of repetitive motions for delayed appeal. *Cf. State v. Steffen*, 70 Ohio St. 3d 399, 412 ("When a criminal defendant has exhausted direct review, one round of postconviction relief, and one motion for delayed reconsideration under *State v. Murnahan* in the court of appeals and in the Supreme Court, any further action a defendant files in the state court system is likely to be interposed for purposes of delay and would constitute an abuse of the court system."). Notably, this decision, which was rendered in the context of consolidated death penalty cases in which the state accused appellants of filing repetitive state court actions in the face of imminent execution dates, is of limited value here. In short, state court decisions offer no clear guidance.

Similarly, federal case law makes clear that, depending on the circumstances, res judicata principles might be read to bar claims that were not raised properly along the way in the appeals process. *Cf. Rust v. Zent*, 17 F.3d 155, 160–61 (6th Cir. 1994) (new claims raised in second motion for leave to file a delayed direct appeal were barred by the Ohio Court of Appeals as res judicata because the petitioner had the opportunity to raise constitutional claims during delayed direct appeal but failed to do so); *Washington v. Turner*, 480 F. Supp. 3d 808, 819 (S.D. Ohio 2020) (same); *Rackley v. Sloan*, No. 1:16-cv-1845, 2018 WL 5288553, at *20 (N.D. Ohio Mar. 26, 2018) (where petitioner never sought relief on due process ground that he was not informed of appeal rights in Ohio court of appeal or Supreme Court of Ohio, petitioner was not permitted to file new motion for delayed appeal asserting that ground because "Ohio courts apply *res judicata* principles to preclude the review of an issue in a second motion for leave to pursue a delayed appeal once the court of appeals has already decided the merits of a prior delayed appeal motion" (citing *Ellis*, 2005 WL 3047431)).

That said, a few aspects of the case law suggest that the circumstances here tilt in favor of stay-and-abeyance. First, the cases disallowing multiple motions for delayed appeal involved either a second attempt to raise claims that the appellants could and should have raised earlier, or a second attempt to seek a delayed appeal that was previously rejected *on the merits*. Neither is the case here. Petitioner did raise his claims at the earliest opportunity, only to be thwarted by irregularities in the mailing of his original Notice of Appeal and by the apparent failure to receive notice that his delayed appeal had been granted—both matters that appear to have been out of his control, since his affidavit and exhibits demonstrate that he exercised due diligence in placing his original notice of appeal in the prison mail service system on April 30, 2024, 14 days before the expiration of his 45-day deadline. Further, the Supreme Court of Ohio initially granted Petitioner's motion for leave to file a delayed appeal and then subsequently dismissed it for failure to prosecute. That is not a dismissal on the merits.

Relatedly, the holdings in the federal cases cited above indicate that the petitioners were not permitted to raise claims in a second motion for delayed appeal that they could have raised earlier. That is not the same as holding that the petitioners were precluded from even filing a second motion for delayed appeal.

* * *

The foregoing suggests that the decision whether to stay these proceedings and hold them abeyance appears to lie within the Undersigned's discretion. And because, for the reasons set forth above, Petitioner satisfies the requirements for a *Rhines* stay, the Undersigned elects to exercise that discretion.

Ultimately, this is a case confined to its facts—one with a unique set of circumstances and mailroom issues that, in this instance, justify granting the motion to stay.

For these reasons, the Undersigned **GRANTS** Petitioner's Motion to Stay. Nevertheless, Petitioner **IS ADVISED** that nothing about this decision should be construed as a guarantee that the Ohio Supreme Court will grant or even accept a second motion for delayed direct appeal, or as expressing any opinion about the viability or merits of Petitioner's claims in this action.

## V. Conclusion

For the foregoing reasons, the Undersigned **GRANTS** Petitioner's Motion to Stay (ECF No. 3). Petitioner is **ORDERED** to initiate his proposed state-court action **within forty-five (45) days** of the date of this Order. Petitioner **SHALL SEEK** reinstatement of this case on the Court's active docket **within thirty (30) days** of fully exhausting his state court remedies.

The Clerk is **DIRECTED** to **STAY** these proceedings and hold them in **ABEYANCE** until the Court orders otherwise.

**IT IS SO ORDERED.**

August 26, 2026

*s/ S. Courter M. Shimeall*
S. COURTER M. SHIMEALL
United States Magistrate Judge